# LANDS OF McKAY, In re.

Ohio Appeals, Seventh District, Mahoning County.

No. 3560.    Decided April 10, 1953.

Manchester, Bennett, Powers & Ullman, Youngstown, for appellees.

C. William O'Neill, Atty. Genl., Hugh E. Kirkwood, Jr., Asst. Atty. Genl., Columbus, for appellant. Director of Highways.

## OPINION

Per CURIAM.

The questions presented by the appeal of the Director of Highways of the State of Ohio, called director, from a judgment of the court of common pleas entered upon a jury verdict of $70,000.00 returned for appellee "In The Matter of the Extinguishment of all rights and easements of direct access from the lands of J. Russell McKay, executor of the estate of James M. McKay, deceased, et al," is whether the trial judge erred to the director's prejudice in the admission and rejection of evidence, in refusal to charge the jury as requested by the director, and whether the verdict of the jury "was excessive and against the manifest weight of the evidence."

Prior to 1948 the land involved, known as original lot number 1, situated in the city of Youngstown, Mahoning county, Ohio, owned by James M. McKay, of whose estate J. Russell McKay, called executor, is executor, was bounded on the north by West Federal Street, on the west by Spring Common, a duly dedicated and accepted thoroughfare of the city of Youngstown, on the east by lands of others, and on the south there was pedestrian and vehicular access by way of an alley to Front Street. Spring Common was a square approximately 125 feet in width upon which various streets converged. The building situated on Lot No. 1, which has not been altered physically, had and still has three storerooms fronting on West Federal Street, four store rooms fronting on Spring Common, and seventeen rooms on the second floor; and was accessible to pedestrian and vehicular travel from Front Street, West Federal Street, the alley, and Spring Common.

As the result of a contract entered into in May 1945 by the director, the city of Youngstown, a municipal corporation, and three railroad companies Spring Common was reconstructed, the bridge which connected Ohio State Route 18 with Spring Common, and which spanned the Mahoning River and the tracks of the railroad companies, was rebuilt and extends now to West Federal Street. Front Street was extended in a general northwesterly direction, and by a change of grade passes under such bridge, rendering appellee's building inaccessible to vehicular traffic from Front Street and the alley.

As the result of such reconstruction no highways converge on Spring Common, which has been eliminated. A retaining wall with railing protecting pedestrian travel was constructed on the Spring Common side of appellee's property, and the highway lowered denying vehicular access to appellee's building from the Spring Common side.

The trial judge overruled the director's objection to the introduction into evidence of appellee's exhibits indicating barricades of approaches to Spring Common during construction on the ground that the exhibits showed a temporary situation for which the director contends appellee is not entitled to compensation.

Executor contends such exhibits were offered and admitted in evidence for the sole purpose of establishing "the time of the taking of this property," which time subsequently was stipulated, and that the trial judge did not err to the director's prejudice in their admission.

In view of the fact that the improvement contemplated permanent elimination of Spring Common and vehicular access to appellee's property the barricades did not constitute a "temporary situation." Such elimination was permanent from the time the first barricade was erected. We conclude that such exhibits were properly admitted.

The trial judge admitted in evidence, over the director's objection, the following testimony of two of appellee's tenants of storerooms on the Spring Common side of his building:—

"Q. Prior to the improvement, Mr. Dempsis, what was your gross business per week?

"Mr. Kirkwood: We object. May it please the court, he is going to attempt to show loss of business.

"The Court: I think it is competent to show whether or not his business fell off. I don't know anything about what he is going to testify to. I am doubtful about the figures. I will permit it. Give you an exception.

"Q. Would you please read that question again.

(Whereupon, the last question was read then by the court reporter.)

"A. Well, what year?

"Q. Well, let's say 1947.

"A. 1947 there was around $250, $300, it was around there, something like that—$350, it depends, some weeks was a little better, some weeks less.

"Q. With respect to the Spring of 1948, before the improvement, what did your gross business average a week.

"The Court: Same objection and exception.

"Mr. Kirkwood: Yes, sir.

"Q. You may answer.

"A. Well, it's about the same: it's went down a little bit, you know, just a little bit it started to go down, not very much.

"Q. When the improvement was completed, and since it has been completed, what has been your average gross business per week?

"Mr. Kirkwood: Objection.

"The Court: Objection overruled.

"A. $85; $65; $55; $60 a week."

* * *

"Q. What was your gross business per week before the improvement?

"Mr. Kirkwood: We object.

"The Court: Same ruling; exceptions.

"Mr. Kirkwood: Note our exceptions.

"Q. Would you read the last question.

(Whereupon, the last question: 'what was your gross business per week before the improvement?' was read by the court reporter.)

"A. Well, it was about to me between $300 and $400 a week.

"Q. Three-hundred and four-hundred dollars a week?

"A. Yes.

"Q. And what has your gross business been since the improvement?

"Mr. Kirkwood: Objection.

"The Court: Same ruling. Overruled and exceptions.

"Q. You may answer.

"A. You mean now?

"Q. Yes.

"A. Now, I reach up to $80; $85; $60."

The testimony of the two witnesses referred to should not have been admitted because the reduction of the income of such tenant witnesses was not based solely upon any showing of extinguishment of access to the storerooms by reason of this improvement and is entirely too speculative.

However, due to the conclusion we reach finally we conclude that the introduction of this incompetent testimony is not so

prejudicial as to warrant a reversal of the judgment of this case, especially in view of the provisions of §11364 GC, that no judgment shall be reversed if substantial justice has been done.

The trial judge refused to charge the jury in writing before argument the following instructions submitted by the director, designated respectively as requests 2, 3 and 4, in which refusal the director maintains the trial judge erred to his prejudice:—

"You are instructed as a separate proposition of law that where, as the result of the improvement of a street, there is a diversion of pedestrian or vehicular traffic causing a loss to a business fronting upon such street it has been held that such loss does not constitute an element to be considered in fixing the damages of the owner." Special Instruction Number 2.

"You are instructed as a separate proposition of law that an individual owner has no right to insist that the entire volume of pedestrian or vehicular traffic that would naturally flow over a highway or street on which his property abuts, pass undiverted and unobstructed." Special Instruction Number 3.

"You are instructed as a separate proposition of law that the property owner is not entitled to any compensation for the temporary inconvenience caused him during the construction of this highway project." Special Instruction Number 4.

The director cites Nichols on Eminent Domain, Volume IV, page 275, and Volume II, page 409, respectively as authority for requests numbers 2 and 3; and 18 American Jurisprudence, page 901, as authority for request number 4. Request number 2 was practically in the verbatim language of the authority cited.

With respect to charge number 3, the director maintains that it is a basic rule of law "that highways are built for the traveling public and are not built in particular to bring traffic to the abutting property owners on a highway," and "are not for the enhancement of property of abutting property owners."

Arguing in behalf of request number 4, the director maintains that temporary inconvenience suffered by appellee is not "a compensable item."

Appellee contends that even though the requests to charge as submitted were correct in the abstract they were not pertinent and responsive to any one or more of the issues in the case raised by the pleadings and the evidence offered in support of them, and that had the trial judge charged as the

director requested he would have been "guilty of the grossest kind of error."

As to request number 2, it appears upon its face that it is not a definite statement of the law applicable to this case, and is contrary to the holding of the supreme court in the case of **Schimmelmann v. Lake Shore & Michigan Southern Railway Co., 83 Oh St 356.**

The refusal of the trial judge to charge special request number 3 is supported by Schimmelmann v. Lake Shore & Michigan Southern Railway Co., supra. The trial judge did not err to appellee's prejudice in refusing to submit request number 3 to the jury.

With reference to request number 4, we have answered the question of claimed error as to that request by what we have said in disposing of the claimed error with reference to admissions of exhibits showing barricades. There was no "temporary" elimination of vehicular traffic. Such extinguishment of access was permanent.

Executor's expert witnesses testified that the damage to executor's real estate was $100,000.00, $100,000.00, and $77,062:50 respectively. Director's expert witnesses testified such damage was $16,000.00, $23,193.75, and $19,673.28 respectively.

We have carefully considered all of the evidence in this case, including that which relates to the amount of the verdict of the jury, and conclude that such verdict is excessive and against the manifest weight of the evidence, but not as the result of passion and prejudice; and that a remittitur should be ordered by this court of all damages awarded in excess of $55,000.00, and upon acceptance by the appellee of this remittitur judgment will be entered in the amount of $55,000.00, it appearing to the court that thereby substantial justice will have been done between the parties.

Upon failure of appellee to accept such remittitur in writing filed with the Clerk of this Court within ten days from the date of the docket entry of this court, the judgment of the trial court is reversed as against the manifest weight of the evidence and the admission of incompetent evidence to which reference has been made, and the case is remanded to the trial court for further proceedings to be had in accordance with law. Otherwise the judgment of the trial court is affirmed as modified.

GRIFFITH, PJ, PHILLIPS & NICHOLS, JJ, concur.